IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                   Civil Action No. 5:08CR14
                                           (STAMP)

ADAM LEE KERN,

    Defendant.

**MEMORANDUM OPINION AND ORDER
AFFIRMING AND ADOPTING REPORT AND
RECOMMENDATION OF MAGISTRATE JUDGE**

I.  Procedural History

On February 6, 2008, the defendant, Adam Lee Kern, was named in a one-count indictment charging him with being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). Thereafter, the defendant filed a motion to suppress evidence of the two guns seized during his arrest. The government filed a response in opposition. United States Magistrate Judge James E. Seibert conducted an evidentiary hearing on the matter. On April 21, 2008, the magistrate judge entered a report recommending that the defendant's motion to suppress evidence be denied. The defendant filed objections to the report and recommendation.

II.  Standard of Review

Pursuant to 28 U.S.C. § 636(b)(1)(C), this Court must conduct a *de novo* review of any portion of the magistrate judge's recommendation to which objection is timely made. As to those

portions of a recommendation to which no objection is made, a magistrate judge's findings and recommendation will be upheld unless they are "clearly erroneous." See Webb v. Califano, 468 F. Supp. 825 (E.D. Cal. 1979). Because the defendant has filed objections, this Court undertakes a de novo review of the report and recommendation.

## III. Facts

In the fall of 2007, defendant Kern was wanted on three arrest warrants: a state misdemeanor warrant for violation of home confinement; a state felony warrant for failure to register as a sex offender; and a federal warrant for unlawful flight to avoid prosecution. The warrants had been outstanding for several months, but Kern was a fugitive and had cut off his electronic monitoring bracelet in an effort to evade authorities. In October 2007, the defendant began staying at a farmhouse in the Deep Valley area of Tyler County, West Virginia. The farmhouse is legally owned by Ms. Joy Ferrebee (the defendant's maternal grandmother), Ms. Ferrebee's living siblings, and Ms. Ferrebee's deceased sister's living heirs. A key to the farmhouse is kept on the front porch, permitting family members, including the defendant, to stay at the farmhouse without the express permission of the legal owners. After arriving at the farmhouse in October 2007, the defendant stayed there for a few weeks, departed, and then returned in November 2007. The

defendant, his wife, and his two stepdaughters then stayed at the farmhouse until the defendant's arrest on January 11, 2008.

On January 11, 2008, Corporal C.J. Lantz of the West Virginia Police Department learned from a confidential informant that the defendant might be at the farmhouse. In addition to being aware of the defendant's felony fugitive status, Corporal Lantz learned that the defendant's two stepdaughters alleged that the defendant had sexually molested them, and was informed that the defendant was mentally unstable, might possess a gun, and might react "in an extreme manner" if confronted. At approximately 8:00 p.m. on January 11, 2008, Corporal Lantz, other West Virginia state police officers, deputies from the Tyler County Sheriff's Department, and Sistersville police officers arrived at the farmhouse. Although it is uncontested that the officers had a valid arrest warrant, the officers did not have a search warrant to enter or search the house. The officers knocked on the door, announced their presence, and seconds later entered the farmhouse. The officers found the defendant in the front room, sitting on a bed. The defendant reached for a pistol that was on the floor next to a night stand. A deputy dove onto the defendant and subdued him. The defendant was placed under arrest. The defendant then told the officers that another gun was under the bed. A search under the bed revealed a rifle, previously within the defendant's reach.

IV. <u>Discussion</u>

The defendant contends in his motion to suppress that the two guns seized from the farmhouse during his arrest must be excluded from the evidence at trial because police officers entered the farmhouse without a search warrant. In support of his motion, the defendant relies on <u>Steagald v. United States</u>, 451 U.S. 204 (1981). The defendant argues that <u>Steagald</u> stands for the proposition that law enforcement may not, acting only upon an arrest warrant and in the absence of exigent circumstances or consent to search, enter the home of a third-party to apprehend a suspect. The defendant contends that <u>Steagald</u> requires suppression of the evidence against him because the farmhouse was owned by third-parties (his grandmother and her siblings) and the police did not procure a search warrant before entering the premises.

The government responds that pursuant to <u>Payton v. New York</u>, 445 U.S. 573 (1980), the arrest warrant alone was sufficient to authorize entry into the farmhouse because the house was, in effect, the defendant's residence. <u>Payton</u>, 445 U.S. at 603 ("for Fourth Amendment purposes, an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within"). In the alternative, the government asserts that exigent circumstances -- the potential dangerousness

of the defendant -- required a search of the house without a search warrant.

Magistrate Judge Seibert recommends that the defendant's motion to suppress be denied because the arrest warrant was sufficient to protect the defendant's Fourth Amendment rights. This Court agrees.

"It is well settled under the Fourth and Fourteenth Amendments that a search conducted without a warrant issued upon probable cause is 'per se unreasonable . . . subject only to few specifically established and well-delineated exceptions.'" Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973) (quoting Katz v. United States, 389 U.S. 347, 357 (1967)). One such exception to the warrant requirement exists when a search is conducted incident to a lawful arrest. See Chimel v. California, 395 U.S. 752 (1969). The scope of a search incident to arrest is not limited to the arrestee's person, but extends to the area within the arrestee's immediate control. Id. at 763. The area of "immediate control" means the area from which an arrestee might gain possession of a weapon or destructible evidence. Id.

The guns seized in this case were located next to and underneath the bed upon which the defendant was sitting when the officers arrested him. Both guns were within the defendant's reach, and, indeed, when the officers entered the farmhouse, they observed the defendant reaching for the pistol that was next to the

night stand.  Because the defendant could have gained possession of either gun when he was being arrested, the guns were within his immediate control.  Thus, if the defendant's arrest was lawful, the search of the area around and under the bed, and the seizure of the guns discovered there, was constitutionally permissible incident to the arrest.

The defendant argues that, pursuant to the Supreme Court's holding in Steagald, his arrest was unlawful because the officers entered the farmhouse without a search warrant.  The defendant asserts that because he was staying in a house owned by third-parties at the time of his arrest, the arrest warrant was insufficient to protect his Fourth Amendment rights.  The defendant's interpretation of Steagald is overbroad.  In Steagald, the police entered the residence of Gary Steagald without a search warrant because officers believed that Ricky Lyons, a suspect for whom they had an arrest warrant, was inside. While searching the house for Mr. Lyons, officers discovered a large quantity of cocaine.  The government then arrested and indicted Mr. Steagald on federal drug charges.  Prior to trial, Mr. Steagald moved to suppress all of the evidence uncovered during the search of his residence because the police failed to secure a search warrant for his home.  The United States Supreme Court framed the issue as follows: "the issue [in Steagald] is not whether the subject of an arrest warrant can object to the absence of a search warrant when

6

he is apprehended in another person's home, but rather whether the residents of that home can complain of the search." Steagald, 451 U.S. at 219. The Court concluded that the evidence against Steagald was seized in violation of the Fourth Amendment because the officers had only an arrest warrant to arrest Mr. Lyons, not a warrant to search the residence of Mr. Steagald. Id. at 222.

In this case, unlike Steagald, it is the arrestee, rather than the homeowner, who seeks to suppress the evidence seized without a search warrant. As a number of courts have recognized, the right acknowledged in Steagald "is personal to the homeowner and cannot be asserted vicariously by the person named in the arrest warrant." United States v. Underwood, 717 F.2d 482 (9th Cir. 1983); see also United States v. Agnew, 407 F.3d 193 (3d Cir. 2005) ("Steagald protected the interest of the third-party owner of the residence, not the suspect himself"); United States v. Clifford, 664 F.2d 1090 (8th Cir. 1981) (arrest warrant for suspect and officer's knowledge of suspect's presence in the home of a third party justified their entry and subsequent search of the suspect incident to his arrest).

The parties contend that the result in the case hinges upon the defendant's status as a resident versus an overnight guest in the farmhouse. The issue of the defendant's residency, however, is irrelevant because under either view of the circumstances, the entry of the farmhouse pursuant to the arrest warrant, and the

7

contemporaneous search of the defendant incident to his arrest, did not violate the defendant's Fourth Amendment rights.

If Kern resided at the farmhouse, his arrest was lawful because Payton permits officers to enter the residence of a suspect, without a search warrant, to execute an arrest warrant for the suspect. Payton, 445 U.S. at 602-03. If Kern was an overnight guest at the farmhouse, the officers' entry did not violate his privacy rights because the officers had a warrant for his arrest and the right recognized in Steagald belongs only to a third-party homeowner who is not named in the arrest warrant. Therefore, because the officers properly entered the farmhouse with an arrest warrant,[1] the search of the area within the defendant's immediate control incident to his arrest was constitutionally permissible.

## V. Conclusion

Because, after a de novo review, this Court concludes that the magistrate judge's recommendation is proper and the defendant's objections to the report and recommendation lack merit, this Court hereby AFFIRMS and ADOPTS the magistrate judge's report and recommendation. Accordingly, the defendant's motion to suppress is DENIED.

---

[1] Because this Court has determined that the arrest warrant was sufficient to protect the defendant's Fourth Amendment interests in this case, it is unnecessary to address in detail the government's argument regarding exigent circumstance. Nonetheless, this Court agrees with the analysis and conclusion of the magistrate judge that exigent circumstances were absent.

8

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit a copy of this memorandum opinion and order to counsel of record herein.

DATED:      June 4, 2008

/s/ Frederick P. Stamp, Jr.
FREDERICK P. STAMP, JR.
UNITED STATES DISTRICT JUDGE